# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

A SOCIETY WITHOUT A NAME, FOR PEOPLE
WITHOUT A HOME MILLENNIUM-FUTURE-PRESENT,

      Plaintiff,

v.                                 Civil Action No. 3:09cv480

COMMONWEALTH OF VIRGINIA, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on the motions to dismiss filed by Defendants Commonwealth of Virginia ("VCU"),[1] City of Richmond ("the City"), and Homeward. (Docket Nos. 35, 39, 40.) VCU, the City, and Homeward each move to dismiss the Second Amended Complaint (Docket No. 33) filed by Plaintiff A Society Without a Name, for People Without a Home Millennium-Future-Present ("ASWAN"). ASWAN has submitted memoranda in opposition to Defendants' motions. (Docket Nos. 43, 45, 46.) Defendants have replied. (Docket Nos. 49, 51, 52.) On February 4, 2010, the Court heard oral argument. The matter is ripe for disposition. For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that the Court GRANT Defendants' motions to dismiss.

---

[1] ASWAN filed suit against the "Commonwealth of Virginia, doing business as Virginia Commonwealth University ('VCU'), a state university located in the City of Richmond, Virginia." (2d Am. Compl. ¶ 3.)

# I. **Procedural Background**

On February 17, 2009, ASWAN filed a Complaint in the Circuit Court for the City of Richmond against Defendants VCU, the City, Homeward, and John Doe. (Notice of Removal, Ex. A. Compl.) (Docket No. 1.) The Complaint alleged violations concerning the decision to locate the Conrad Center, a facility that provides free services to the homeless, on Oliver Hill Way,[2] a location that ASWAN alleges impermissibly segregates the homeless from Richmond's mainstream community. (*See generally* Compl.) ASWAN alleged violations of the Americans with Disabilities Act ("ADA"),[3] the Fair Housing Act ("FHA"),[4] the Equal Protection Clause,[5]

---

[2] For some time prior to the filing of this lawsuit, Oliver Hill Way bore the name 17th Street. The Court will use its current name.

[3] 42 U.S.C. §§ 12131 *et seq.*

[4] 42 U.S.C. §§ 3601 *et seq.*

[5] The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

and 42 U.S.C. §§ 1983[6] and 1985(3).[7] (Compl. 8-9.) On July 28, 2009, Defendant Homeward removed the action to this Court. (Docket No. 1.)

Defendants VCU, the City, and Homeward filed motions to dismiss ASWAN's complaint. (Docket Nos. 3, 6, 8.) On October 15, 2009, the Honorable Robert E. Payne ordered ASWAN to file an amended Complaint setting forth separately numbered counts and identifying "the specific statute alleged to have been violated, the names of the persons or entities alleged to have committed the specified violation, the offending conduct allegedly engaged in by each defendant named in the count, and the dates and time specifications of each alleged violation." (Oct. 15, 2009 Order 1.) (Docket No. 24.) Judge Payne denied Defendants' motions to dismiss

---

[6] 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[7] 42 U.S.C. § 1985(3) states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. 1985(3).

"without prejudice to refiling in opposition to the Amended Complaint." (Oct. 15, 2009 Order 2.) Judge Payne's October 15, 2009 Order also established a briefing schedule, which required Defendants' answers and any motions to be filed by November 20, 2009. (Oct. 15, 2009 Order 1.)

On October 30, 2009, ASWAN filed its Amended Complaint. (Docket Nos. 25, 26.)[8] On November 16, 2009, prior to Defendants' filing of any Answers or motions, ASWAN moved to amend its Amended Complaint. (Docket No. 27.) Judge Payne granted ASWAN's motion.

ASWAN's Second Amended Complaint adds to Defendants VCU, the City, and Homeward the Defendants "John Doe and/or Multiple John Does," and alleges fourteen separate counts. (2d Am. Compl.) (Docket No. 33.) Counts One through Three lie against VCU. Count One alleges that VCU violated the ADA. (2d Am. Compl. ¶¶ 28-119.) Count Two alleges that VCU violated the FHA prohibitions against housing discrimination and against handicapped persons. (2d Am. Compl. ¶¶ 120-25.) Count Three alleges that VCU violated the FHA prohibitions against discrimination in housing services because of race. (2d Am. Compl. ¶¶ 126-49.)

Counts Four through Seven allege claims against the City. Count Four alleges that the City violated the ADA. (2d Am. Compl. ¶¶ 150-205.) Count Five alleges that the City violated the FHA prohibitions against housing discrimination against handicapped persons. (2d Am. Compl. ¶¶ 206-11.) Count Six alleges that the City violated the FHA prohibitions against discrimination in housing services because of race. (2d Am. Compl. ¶¶ 212-22.) Count Seven alleges that the City violated the Equal Protection Clause. (2d Am. Compl. ¶¶ 223-28.)

---

[8] ASWAN appears to have filed two copies of its First Amended Complaint. (Docket Nos. 25, 26.)

Counts Eight through Ten lie against unnamed party "Doe(s)." Count Eight alleges that Doe(s) violated the ADA. (2d Am. Compl. ¶¶ 229-35.) Count Nine alleges that Doe(s) violated the FHA prohibitions against housing discrimination against handicapped persons. (2d Am. Compl. ¶¶ 236-42.) Count Ten alleges that Doe(s) violated the FHA prohibitions against housing discrimination because of race. (2d Am. Compl. ¶¶ 243-48.)

Counts Eleven through Thirteen allege claims against Homeward. Count Eleven alleges that Homeward violated the ADA. (2d Am. Compl. ¶¶ 249-67.) Count Twelve alleges that Homeward violated the FHA prohibitions against housing discrimination because of handicapped conditions. (2d Am. Compl. ¶¶ 268-73.) Count Thirteen alleges that Homeward violated the FHA prohibitions against housing discrimination because of race. (2d Am. Compl. ¶¶ 274-79.) Finally, Count Fourteen alleges that the City, Doe(s), and Homeward violated 42 U.S.C. § 1985(3) by entering into a conspiracy to reduce the visibility of the homeless in Richmond's mainstream community. (2d Am. Compl. ¶¶ 280-88.)

ASWAN seeks the following relief: (1) entry of a declaratory judgment that Defendants engaged in a conspiracy to violate the ADA and FHA rights of homeless persons in the City of Richmond, as well as disabled homeless persons and black homeless persons in the City of Richmond; that the City violated the Equal Protection Clause as it applies to homeless people in the City of Richmond; that VCU violated the FHA and ADA rights of homeless persons in the City of Richmond, as well as disabled homeless persons and black homeless persons in the City of Richmond; and that the City violated 42 U.S.C. § 1983; (2) a permanent injunction prohibiting Defendants from further violations of the enumerated statutes; (3) "[a]n injunction requiring the defendants . . . to provide the means for a reasonable degree of free transportation to homeless

people to and from . . . [services] in a manner that would not have the purpose or effect of segregating them from or reducing their visibility in majority white neighborhoods;" and, (4) a monetary judgment against all Defendants, to be applied to the cost of the transportation requested. (2d Am. Compl., Conclusion (A)-(D).)

On November 24, 2009, Judge Payne referred all pretrial motions to the undersigned Magistrate Judge. (Docket No. 34.)

On December 14, 2009, Homeward filed its motion to dismiss and Answer. (Docket Nos. 35, 37.) On December 15, 2009, the City and VCU filed their motions to dismiss (Docket Nos. 39, 40) and Answers (Docket Nos. 38, 42). ASWAN responded. (Docket Nos. 43, 45, 46.) On January 4 and 5, 2010, Defendants replied. (Docket Nos. 49, 51, 52.) The Court heard oral argument on February 4, 2010.

## II. Factual Background

Viewed in the light most favorable to ASWAN, a recitation of the facts follows.

### A. Introduction

ASWAN "is an unincorporated association made up of homeless and formerly homeless people which advocates for the rights of homeless people." (2d Am. Compl. ¶ 1.) ASWAN's members include "[h]omeless people in the City of Richmond who are disabled or perceived to be or regarded as disabled," "[b]lack homeless people in the City of Richmond," and "[h]omeless people in the City of Richmond." (2d Am. Compl. ¶ 1(i)-(iii).) Central to ASWAN's argument here is its assertion that all homeless people, "by reason of their homeless status, are perceived as being mentally ill, suffering from alcoholism, recovering from substance abuse, or regarded as having one or more of such disabilities." (2d Am. Compl. ¶ 118.) In support of this theory,

6

ASWAN identifies five current members of ASWAN who it alleges fall into this classification.[9] (2d Am. Compl. ¶ 118.)

The gravamen of ASWAN's Second Amended Complaint flows from its opposition to the relocation of services for the homeless to Oliver Hill Way. ASWAN alleges that the Conrad Center's location on Oliver Hill Way results in the segregation of homeless people "in material ways, from visibility in Richmond's mainstream and from the vicinity of VCU's main campus during daytime hours." (2d Am. Compl. ¶ 118.) Additionally, ASWAN alleges that the Conrad Center's physical location presents difficulties to its patrons, who are often disabled. (*See, e.g.,* 2d Am. Compl. ¶ 118 A(i), (iv).) ASWAN seeks to prevent any further segregation of the homeless from downtown Richmond and to acquire free transportation for the homeless to and from the Conrad Center.

**B.    Late 1980s**

ASWAN contends that the decision to relocate the Conrad Center resulted from discriminatory animus toward the homeless. ASWAN alleges conspiratorial behavior starting over twenty years ago. Specifically, ASWAN claims that, beginning in the late 1980s, various entities including the City, VCU, and Homeward conspired to locate the Conrad Center in a remote area removed from downtown Richmond. (*See, e.g.,* 2d Am. Compl. ¶ 93.) ASWAN

---

[9] Only two members, Alan Dwight Bittle and Cleophes Satchell, appear to have physical impairments. Bittle suffers physical impairments such as "a lumbar spine injury, . . . bleeding from behind his eardrums and internal bleeding . . . [previous] concussions and skull fracture . . . knee problems and problems with his feet and ankles." (2d Am. Compl. ¶ 118(A)(i).) Satchell, in addition to receiving some type of medication for a mental disability, "has diabetes." (2d Am. Compl. ¶ 118(D)(ii).) ASWAN alleges that the other identified members, as well as the two with physical impairments, are ADA-protected persons because they are homeless, and perceived by others to have qualifying disabilities under the Act. (2d Am. Compl. ¶¶ 118(A)(i), (B)(i), (C)(ii), (D)(ii), (E)(ii).)

contends that Defendants pressured the Daily Planet, the primary provider of services for the homeless, to choose the Oliver Hill Way location for its site. (2d Am. Compl. ¶¶ 20-27.) ASWAN alleges that Defendants conspired to move homeless services to Oliver Hill Way because of "'Not in My Backyard' ('NIMBY')" prejudices based on class; disability; race; or a combination of class, disability, and race. (2d Am. Compl. ¶ 20.)

### C.    1992-1997

ASWAN claims that, as early as 1992, then-Mayor Walter T. Kenney commented to a newspaper reporter "that there are too many blacks [d]owntown."[10] (2d Am. Compl. ¶ 214.) In 1993, during a meeting of the Mayor's Committee on Land Use and Homelessness, Joyce A. Wilson, then-City Manager Robert C. Bobb's ("Bobb") Chief of Staff, remarked that homeless people "look different," and that the perception of lack of safety "becomes reality." (2d Am. Compl. ¶¶ 156, 158.)

Some time after Wilson's 1993 comment, ASWAN alleges that VCU, through its president Eugene P. Trani ("Trani") and other agents, "entered into discussions with one or more representatives of the City to plan ways to persuade the Daily Planet to abandon [its] plans to relocate" its services to a site near VCU's main campus. (2d Am. Compl. ¶ 29.) ASWAN alleges that VCU encouraged United Way to communicate to the Daily Planet that monetary donations to the Daily Planet would be curtailed if the Daily Planet relocated its services to a location near VCU's main campus. (2d Am. Compl. ¶¶ 31-32.) As a result, the Daily Planet did not obtain the site near VCU's main campus, and Bobb conveyed to Sheila Crawley, then-

---

[10] ASWAN later contends that the conspiracy "began at least by some time in 1995." (2d Am. Compl. ¶ 282.)

executive director of the Daily Planet, his suggestion that the Daily Planet consider the Oliver Hill Way location, a property owned by VCU, as a suitable alternative location for the Daily Planet's services. (2d Am. Compl. ¶¶ 39-40.) ASWAN alleges that VCU favored Bobb's suggestion because the Oliver Hill Way location "was far distant and inaccessible to VCU's main campus." (2d Am. Compl. ¶ 47.)

In 1995, Trani made Bobb aware that VCU would make the Oliver Hill Way location available to the Daily Planet. (2d Am. Compl. ¶¶ 48-50.) ASWAN alleges that the Daily Planet resisted pressure from the City and VCU to relocate to Oliver Hill Way because it preferred other site locations. (2d Am. Compl. ¶ 57.) ASWAN alleges that, to facilitate the move to Oliver Hill Way, in late 1995 or early 1996, communications among the City, VCU, and Defendant Doe(s) resulted in Doe(s) offering the Daily Planet 2 million dollars to locate its services at the VCU-owned site on Oliver Hill Way. (2d Am. Compl. ¶¶ 58-61.) ASWAN does not identify who made any such communications, to whom they were made, or the manner of communication.

**D.      1997-1999**

In 1997, the Board of the Daily Planet voted not to relocate to the Oliver Hill Way location. (2d Am. Compl. ¶ 79.) On June 18, 1997, Trani wrote to the Daily Planet, objected to the Daily Planet's decision, and asked the Daily Planet to reconsider and relocate to Oliver Hill Way. (2d Am. Compl. ¶ 80.) Despite Trani's request, in July 1997, the Daily Planet began moving services to a location on West Grace Street. (2d Am. Compl. ¶¶ 81-84.)

Contemporaneously, the City began the process of enacting a new zoning ordinance that would prohibit a service provider for the homeless to be located on West Grace Street, the exact location where the Daily Planet was setting up its new site. (2d Am. Compl. ¶¶ 85, 174.)

9

ASWAN filed suit to prevent the re-zoning of downtown Richmond.[11] (2d Am. Compl. ¶ 2); *see In re: ASWAN*, No. HI-632-3, 1997 Va. Cir. LEXIS 714 (Va. Cir. Ct. Nov. 18, 1997) (dismissing the suit because ASWAN lacked standing because challenges to procedural violations in zoning ordinances did not allege direct and adverse effects on ASWAN's constituents' interest). In October 1997, the City adopted a "Downtown Plan," which "defined 'street people' as 'those persons who habitually loiter on public streets and in public spaces,' who are 'typically indigent and homeless, with a significant percentage being substance abusers, and with many suffering from mental illness.'" (2d Am. Compl. ¶¶ 186-87.) The Downtown Plan sought to reduce the negative cultural or economic impact of street people on downtown Richmond. (2d Am. Compl. ¶¶ 188-90.) The 1998-1999 City budget included 1 million dollars for a homeless shelter and service center on Oliver Hill Way, although this provision was removed before the City adopted the budget. (2d Am. Compl. ¶¶ 192-93.)

ASWAN contends that, sometime around 1998, Defendants thought the 2 million dollar donation from Doe(s) was insufficient to ensure that the Daily Planet would choose the Oliver Hill Way location, and that therefore, "the City, Doe, and VCU decided on additional steps including creation of an entity to intimidate homeless providers." (2d Am. Compl. ¶ 66.) The United Way created this entity in 1998. (2d Am. Compl. ¶ 91.) ASWAN opposed its creation. (2d Am. Compl. ¶¶ 89-90.) This entity later became Defendant Homeward, "which was de facto created primarily to pressure homeless providers to select isolated locations for help to homeless

---

[11] ASWAN asserts that the original organization operating under the name ASWAN filed suit in the Circuit Court for the City of Richmond, but that the organization filing suit in this Court differs from this original organization. (2d Am. Compl. ¶ 2.) ASWAN asserts that it differs from the original ASWAN in operating rules, in exact name, and because the original ASWAN "has been inactive since the early 2000s." (2d Am. Compl. ¶ 2.)

people, isolated from Richmond's mainstream in general and VCU's main campus in particular." (2d Am. Compl. ¶ 93.)

E.    **1999-2007**

In June 1999, the City exercised the power of eminent domain to take a property owned by the Daily Planet that served as a help center for mentally disabled homeless people. (2d Am. Compl. ¶ 194.) After the taking, the City refused an application to relocate the service center to a site on West Grace Street. (2d Am. Compl. ¶ 195.) On October 23, 2000, the Daily Planet filed a fair housing complaint against the City with the Department of Housing and Urban Development. (2d Am. Compl. ¶ 196.)

Subsequently, VCU, the City, Doe(s), and Homeward sought the help of Freedom House, another service provider for the homeless, to relocate the main center for help for the homeless to Oliver Hill Way. ASWAN alleges that VCU, the City, Doe(s), and Homeward promised Freedom House the "material help" previously offered to the Daily Planet if Freedom House would locate services for the homeless on Oliver Hill Way. (2d Am. Compl. ¶ 94.) ASWAN contends that Freedom House agreed to the plan, and VCU and Freedom House then entered into a lease for the facility on Oliver Hill Way. (2d Am. Compl. ¶ 97.)

At some time thereafter, Freedom House sought "to withdraw from the Oliver Hill site because of serious environmental concerns regarding the site." (2d Am. Compl. ¶ 98.) VCU promised to remedy the environmental concerns, and Freedom House proceeded with plans to locate its facility on Oliver Hill Way. (2d Am. Compl. ¶¶ 99, 100.) The City approved Freedom House's application for a special use permit at 1400 Oliver Hill Way. (2d Am. Compl. ¶¶ 101, 102.) Freedom House opened the Conrad Center on February 5, 2007. (2d Am. Compl. ¶ 103.)

11

**F.**     <u>**2007-2009**</u>

In February 2007, ASWAN alleges that Melba Gibbs, a member of the Board of Directors of Homeward and the Executive Director of Freedom House, encouraged faith-based organizations providing food to the homeless to relocate their services to the Conrad Center. (2d Am. Compl. ¶ 261.) ASWAN alleges that efforts to coerce feeding programs to operate from the Conrad Center continued in 2009. (2d Am. Compl. ¶ 107.) During the same month, ASWAN alleges that Homeward "made disparaging remarks directed toward[] homeless people." (2d Am. Compl. ¶ 262.) Later, in April 2007, Homeward successfully "pressured and encouraged" Catholic Charities to relocate to the Conrad Center the central intake program through which homeless people could obtain overnight shelter. (2d Am. Compl. ¶¶ 104, 105.)

ASWAN also alleges that sometime in 2008 or 2009, the Daily Planet obtained a passenger van to transport the homeless from downtown to the Conrad Center. (2d Am. Compl. ¶ 110.) However, the Daily Planet did not hire a driver for the van or obtain the proper insurance. (2d Am. Compl. ¶ 110.) Thereafter, "someone employed with VCU indicated to the Daily Planet an agreement to provide some funding to the Daily Planet . . . [to] provid[e] transportation to homeless people, including disabled homeless people . . . to and from the Conrad Center." (2d Am. Compl. ¶ 111.) ASWAN asserts that VCU rescinded this agreement after ASWAN filed suit, specifically in retaliation for ASWAN's decision to file suit. (2d Am. Compl. ¶¶ 113, 114.)

The Conrad Center continues to operate on Oliver Hill Way and "provides breakfast, supper, counseling and other services" to the City of Richmond's homeless community. (2d Am. Compl. ¶ 102.)

### III. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Wright & Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)) ("*Twombly*"). In *Twombly*, the Supreme Court noted that the complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than "conceivable." *Id.* In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

13

A court determines plausibility by undertaking a "context-specific task" drawing on "judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). In doing so, a court may evaluate which allegations are "entitled to the assumption of truth" because they are supported by factual allegations, and which allegations should be treated as legal conclusions. *Id.* at 1950. Only after distinguishing the well-pleaded facts from legal conclusions may the Court determine which factual allegations support a "plausible claim for relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The complaint must, however, plead sufficient facts to allow a court . . . to infer 'more than the mere possibility of misconduct.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, No. 08-2097, 2009 WL 5126224, at *4 (4th Cir. Dec. 29, 2009) (*quoting Iqbal*, 129 S. Ct. at 1950)). "[F]acts that are 'merely consistent with a defendant's liability' . . . fail to nudge claims 'across the line from conceivable to plausible.'" *Id.* (*quoting Iqbal*, 129 S. Ct. at 1949, 1951 (quotations omitted)).

When a plaintiff asserts a claim of conspiracy to violate civil rights under 42 U.S.C. § 1983(5), however, he or she must meet a high threshold to establish a prima facie case. *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995). To state a claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(3), a plaintiff must establish the following elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (*citing Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)). Importantly, a Section 1985 conspiracy claim requires that the plaintiff show a "meeting of the minds" among conspirators. *Id.* at 1377 (internal quotation omitted). The United States Court of Appeals for the Fourth Circuit requires courts to look closely as to whether "a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." *Simmons*, 47 F.3d at 1377. "Indeed, [the Fourth Circuit has] specifically rejected Section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*

### IV. Analysis

ASWAN places before the Court a lengthy Complaint describing a decades-long effort to assist the homeless and to situate service programs, but ASWAN contends that Defendants actively sought relocation of the homeless outside of downtown Richmond. Defendants have raised a number of defenses to ASWAN's allegations, including arguments that ASWAN lacks standing and that the claims are time-barred.[12] While ASWAN's efforts to advocate for Richmond's homeless community deserve praise, this Court must nevertheless conclude that the claims before the Court cannot survive Defendants' motions to dismiss.

Because the heart of ASWAN's claim lies in its assertion that various entities, including the City, Homeward, and Doe(s), have conspired to force homeless people out of downtown Richmond, the Court begins with analysis of ASWAN's conspiracy claim.

---

[12] In the interest of judicial economy and because other issues resolve the case, the Court presumes, without finding, that ASWAN has standing.

## A.    ASWAN's Conspiracy Claim

ASWAN alleges that Defendants violated 42 U.S.C. § 1985(3) because they conspired "to reduce the visibility in Richmond's mainstream and in certain majority white neighborhoods of those who come within the definition[s]" of protected persons. (2d Am. Compl. ¶ 281.) ASWAN alleges that the conspiracy "began at least by some time in 1995." (2d Am. Compl. ¶ 282.) ASWAN pleads that Defendants "Doe(s) and the City entered into a conspiracy" and that "Doe(s) and the City had a meeting of the minds that they would act in concert with VCU to take coordinated action to seek to induce, pressure and coerce the Daily Planet to relocate."[13] (2d Am. Compl. ¶¶ 281-82.) Specifically, ASWAN asserts that Defendants took actions

> to induce the Daily Planet or to force the Daily Planet to locate its [programs] away from downtown or the majority-white vicinity and neighborhoods near VCU's main campus and from that campus with its majority-white faculty and student body and to reduce the visibility of black and ADA protected/handicapped homeless people in those areas by locating major help to homeless people at the location of the Conrad Center.

(2d Am. Compl. ¶ 283.) Such actions included Doe(s)' offer to the Daily Planet of a sizeable monetary donation if it chose to locate its services on Oliver Hill Way, the creation of Homeward, and Homeward's subsequent efforts to have other service providers locate their operations on Oliver Hill Way. (2d Am. Compl. ¶¶ 284-86.)

Despite the length of the Complaint before the Court, ASWAN's conspiracy claim must fail because it is comprised of conclusory allegations unsupported by concrete facts. *See Simmons*, 47 F.3d at 1377. No factual nexus ties the allegations together. Indeed, the

---

[13] The Court notes that, although ASWAN alleges that the City and Doe(s) agreed to "act in concert with VCU" (2d Am. Compl. ¶ 282), ASWAN did not name VCU or the Commonwealth as a defendant in the conspiracy count.

purportedly violative conduct spans decades, and the disparate events alleged do not establish conspiratorial conduct even when viewed in the light most favorable to ASWAN. ASWAN's allegations do not sufficiently establish a meeting of the minds. *See id.* (requiring a plaintiff to show a meeting of the minds to establish a conspiracy to violate civil rights). For example, even reading ASWAN's complaint liberally, ASWAN fails to allege how the following events connect to form a conspiracy: a 1992 comment by then-Mayor Kenney, a 1993 comment made by Bobb's Chief of Staff, a 1995 letter from Trani, a 1997 letter from Trani, and a mysterious 2 million dollar donation in 1998 from anonymous donors. ASWAN's contention that these facts indicate that Defendants Doe(s) and the City "entered into a conspiracy" (*see, e.g.*, 2d Am. Compl. ¶ 281), or that "Homeward was created as part of the conspiracy and . . . became part of the conspiracy" (2d Am. Compl. ¶ 285), amount to legal conclusions which fail to assert a plausible conspiracy claim. *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009) (finding the plaintiff's Section 1985 conspiracy claim merely a legal conclusion unsupported by factual allegations); *see Iqbal*, 129 S. Ct. at 1950.

Moreover, as in *Twombly*, in this case ASWAN has alleged, at best, "parallel conduct and a bare assertion of conspiracy." *Twombly*, 550 U.S. at 556. Such "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 557. ASWAN fails to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made. (*See, e.g.* 2d Am. Compl. ¶ 201 (alleging that the City "advised homeless people, including members of ASWAN" that they would need to go to the Conrad Center to locate overnight shelter during the winter, but failing to identify who made

such communications, to whom such communications were made, or the manner of communication).) "These bare assertions ... amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim. . . . As such, the allegations are conclusory and not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951 (*quoting Twombly*, 550 U.S. at 554-55)). The undersigned RECOMMENDS that the Court DISMISS Count Fourteen, ASWAN's Section 1985(3) claim.

### B. ASWAN's ADA, FHA, Equal Protection, and Section 1983 Claims Are Time-Barred

The Court may dismiss a claim or action "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," such as the statute of limitations. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). For the reasons that follow, the undersigned finds ASWAN's ADA, FHA, Equal Protection, and Section 1983 claims barred by the applicable statutes of limitations.

#### 1. ASWAN's ADA Claims

Counts One, Four, Eight, and Eleven allege that VCU, the City, Doe(s), and Homeward each violated the ADA. (2d Am. Compl. ¶¶ 28-119,150-205, 229-35, 249-67.) ASWAN alleges that the location of the Conrad Center on Oliver Hill Way has "materially segregat[ed] . . . disabled persons from Richmond's mainstream and from VCU's main campus, [which has] resulted in insult to and humiliation of homeless people who are ADA protected and in considerable physical hardship and inconvenience to them, including to members of ASWAN . . . who are disabled homeless people and/or are ADA protected persons because they have been perceived - because of their homeless status - to be mentally ill, suffering from alcoholism,

18

and/or recovering from substance abuse." (2d Am. Compl. ¶ 116.) Specifically, ASWAN alleges harm to five members, Alan Dwight Bittle, Shaboo Ar-Raheem, Wallace B. Braxton-Bantu, Cleophes Satchell, and Raymond Smith, because these members "have suffered and continue to suffer considerable hardship going up and down the very steep hill they must transverse to get to and from the Conrad Center and Richmond's mainstream, including such locations as the Daily Planet and Monroe Park in the vicinity of VCU's main campus and VCU's main campus itself." (2d Am. Compl. ¶ 118.)

"[T]o establish a violation of the ADA, a plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination" because of the disability. *Baird v. Rose*, 192 F.3d 462, 467-70 (4th Cir. 1999). If the plaintiff establishes that the discrimination alleged "played a motivating role . . . the plaintiff is entitled to relief." *Id.* at 470. In this case, however, the Court need not determine whether ASWAN has established a violation of the ADA because the applicable statute of limitations precludes the Court's review of ASWAN's ADA claims.

###### a.     The Statute of Limitations Bars ASWAN's ADA Claims

The ADA itself does not contain a statute of limitations. Therefore, the Court must adopt the most analogous state statute of limitations. *See* 42 U.S.C. § 1988; *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). This district has determined that the Virginia Rights of Persons with Disabilities Act ("the Virginia Act") constitutes the most analogous state statute of limitations for claims brought under the ADA. *Childress v. Clement*, 5 F. Supp. 2d 384, 388 (E.D. Va. 1998); *Lewis v. Aetna Life Ins. Co.*, 993 F. Supp. 382, 385 (E.D. Va. 1998), *overruled on other grounds*

19

by *Lewis v. Kmart Corp.*, 180 F.3d 166,168 n.2 (4th Cir. 1999). Therefore, the Virginia Act's one-year statute of limitations applies to ADA claims.[14] *Lewis*, 993 F. Supp. at 385.

Determining when a complaint accrues is a matter of federal law. *See Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she "knows or has reason to know of the injury which is the basis of the action." *Cox*, 529 F.2d at 50. Here, presuming the opening of the Conrad Center constituted an unlawful action, the very latest ASWAN knew or should have known of this action was February 5, 2007, the day the Conrad Center opened its doors to the public. Therefore, ASWAN's suit should have been filed no later than February 5, 2008.[15] The instant ADA claims are untimely.

---

[14] ASWAN's citation to a single, unpublished case from another district within the Fourth Circuit does not persuade this Court that a two-year statute of limitations applies. (*See* Pl.'s Mem. Opp'n to Commonwealth of Va.'s Rule 12(b)(6) Mot. to Dismiss Am. Compl. 12 (*citing Peters v. Blue Ridge Reg'l Jail*, No. 7:06cv00595, 2006 WL 3761624, at *2 (W.D. Va. Dec. 21, 2006).)

[15] The Conrad Center's opening constitutes the very latest date by which ASWAN's claims accrued. In fact, the 2006 groundbreaking for the Conrad Center's construction should have provided sufficient notice to ASWAN that the site had been chosen for the Center's location. (*See* The Conrad Center, http://www.freedomhouserichmond.org/html/ConradCenter.htm (noting that the Conrad Center was scheduled to be built in the summer of 2006.) Even presuming that the date of the groundbreaking constitutes the date on which ASWAN's ADA claims accrued, however, proffers a generous construction of the accrual date. The last date each individual Defendant was involved with the opening of the Conrad Center occurred well before 2007.
 Defendant VCU entered a lease with Freedom House for the Oliver Hill Way location on December 10, 2004. (VCU's Mot. Dismiss 2d Am. Compl. 3, 9 & Ex. A). Thus, any ADA claim against VCU likely became time-barred after December 10, 2005.
 The City approved a permit for Freedom House to run the Conrad Center on April 15, 2004. (City of Richmond Reply to Pl.'s Mem. Opp'n to City of Richmond's Rule 12(b)(6) Mot. Dismiss 5.) Thus, any ADA claim against the City likely became time-barred after April 15, 2005.
 Finally, ASWAN alleges that the United Way formed Homeward "with the primary purpose . . . being to get control of homeless providers to intimidate them into actions adverse to the interests of homeless people." (2d Am. Compl. ¶ 250.) Homeward was created in 1998,

b.    **ASWAN Fails to Establish a Continuing Violation of the ADA**

ASWAN seeks to avoid any application of the statute of limitations by claiming a continuing violation of the ADA. Courts have applied the continuing violation doctrine to ADA claims. *See Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 505 (E.D. Va. 2002). To succeed under the continuing violation doctrine, a plaintiff must allege an unlawful practice that continues into the limitations period. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) (recognizing the doctrine of continuing violations as it applies in FHA cases). Courts distinguish between a continuing violation, however, and the continuing ill effects from an original violation. *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (stating that a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation") (internal quotation omitted); *see Moseke*, 202 F. Supp. 2d at 506.

At oral argument, counsel for ASWAN asserted that the following four actions fall within the statute of limitations so as to constitute a continuing violation of the ADA:  (1) Catholic Charities' decision in April 2007 to move central intake for Caritas to the Conrad Center; (2) Homeward's efforts in 2009 to persuade faith-based organizations to move their homeless assistance programs to the Conrad Center; (3) the City's 2009 communication to the homeless that they would need to travel to the Conrad Center to sign up for overnight shelter; and, (4) VCU's alleged retaliation by rescinding the offer to provide free transportation to the homeless to and from the Conrad Center. (*See* 2d Am. Compl. ¶¶ 104-10.) Even viewing the facts most favorably to ASWAN, none of these four actions constitutes a continuing violation.

---

however, and became a separate entity in 2002. (2d Am. Compl. ¶¶ 91-92.) Thus, any actions against Homeward likely became time-barred after 2003.

Presuming that the opening of the Conrad Center constituted an unlawful act violative of the ADA, the fact that the Conrad Center remains located on Oliver Hill Way and continues to offer services from that location does not constitute a continuing violation, but rather the continuing *effect* of the underlying unlawful act: the decision to locate the Conrad Center on Oliver Hill Way. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 189 (4th Cir. 1999) ("At bottom, appellants' continuing violation argument rests on the alleged ongoing effects of the original decision to locate the highway in proximity to Jersey Heights."); *Moseke*, 202 F. Supp. 2d at 507 (finding that the continuing effects of the design and construction of a non-FHA compliant housing complex did not constitute a continuing violation). This Court cannot find that the allegations before it establish that each decision to add a new service for the homeless at the Conrad Center constitutes a continuation of unlawful discrimination under the ADA. ASWAN instead presents allegations concerning the continuing ill effects of the original violation alleged, a showing insufficient to establish a continuing violation of the ADA. The undersigned RECOMMENDS that the Court DISMISS Counts One, Four, Eight, and Eleven.

## 2. ASWAN's FHA Claims

Counts Two, Three, Five, Six, Nine, Ten, Twelve, and Thirteen allege that VCU, the City, Doe(s), and Homeward violated the FHA prohibitions against discrimination in housing services against handicapped persons and because of race. (2d Am. Compl. ¶¶ 120-49, 206-22, 236-48, 268-79.) ASWAN alleges, for example, that VCU and the City "deliberately, intentionally, and successfully caused desperately needed and vital services for handicapped homeless people to obtain placement in overnight shelter . . . to be segregated from Richmond's mainstream." (2d Am. Compl. ¶¶ 124, 210.) ASWAN contends that "private entities [on West Grace Street] and VCU entered into a plan ('the plan against black homeless people') to act in

22

concert to seek to prevent the Daily Planet from relocation . . . to . . . West Grace Street," and that the City was "motivated by a purpose to reduce the number of black people in Richmond's downtown." (2d Am. Compl. ¶¶ 129, 216.) Finally, ASWAN alleges that Homeward's actions against handicapped and black homeless people caused central intake to relocate to the Conrad Center. (2d Am. Compl. ¶¶ 271, 277.)

> The FHA forbids efforts:
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin, [or] (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a), (b).

To state a claim under the first prong, ASWAN "must assert, first, that [Defendants] denied or made housing unavailable to [members of ASWAN] and, second, that [Defendants'] actions were based on [members of ASWAN's] race, color, or national origin." *Edwards v. Johnston County Health Dep't*, 885 F.2d 1215, 1221 (4th Cir. 1989). To state a claim under the second prong, ASWAN must allege "that identical or even analogous services were required and competently provided solely on behalf of white [homeless people] or [non-disabled homeless people]," or that the effect of such services has a discriminatory impact on protected groups. *See id.* at 1224. The Court concludes that, as with ASWAN's ADA claims, the applicable statute of limitations precludes the Court's review of ASWAN's FHA claims.

### a.     The Statute of Limitations Bars ASWAN's FHA Claims

FHA claims bear a two-year limitations period. 42 U.S.C. § 3613(a)(1)(A). ASWAN alleges violations of the FHA related to the opening of the Conrad Center on Oliver Hill Way on

February 5, 2007. Therefore, any FHA claims became time-barred as of February 5, 2009. ASWAN untimely filed suit on February 17, 2009.[16] Thus, the statute of limitations bars ASWAN's FHA claims.[17]

### b. ASWAN Fails to State a Continuing Violation of the FHA

Although the Supreme Court of the United States has recognized the applicability of the doctrine of continuing violation to FHA claims, *see Havens Realty Corp.*, 455 U.S. at 380-81, for the same reasons ASWAN fails to state a continuing violation of the ADA, ASWAN fails to state a continuing violation of the FHA. ASWAN contends that the same four actions fall within the statute of limitations so as to constitute a continuing violation of the FHA as it alleged with respect to the ADA: (1) Catholic Charities' decision in April 2007 to move central intake for Caritas to the Conrad Center; (2) Homeward's efforts in 2009 to persuade faith-based organizations to move their homeless assistance programs to the Conrad Center; (3) the City's 2009 communication to the homeless that they would need to travel to the Conrad Center to sign

---

[16] Moreover, as noted with respect to the ADA claims, the last specific action involving each named Defendant occurred well before the Conrad Center opened in 2007. First, the 2006 groundbreaking for the Conrad Center's construction should have provided sufficient notice to ASWAN that the site had been chosen for the Conrad Center's location, and thus any FHA claims accrued then. Second, Defendant VCU entered a lease with Freedom House for the Oliver Hill Way location on December 10, 2004, meaning that any FHA claim against VCU likely became time-barred after December 10, 2006. Third, the City approved a permit for Freedom House to run the Conrad Center on April 15, 2004, meaning that any FHA claim against the City likely became time-barred after April 15, 2006. Finally, Homeward became a separate entity in 2002, and thus any FHA actions against Homeward likely became time-barred after 2004.

[17] VCU argued that the doctrine of sovereign immunity and the Eleventh Amendment bar ASWAN's FHA claims against VCU. (Mem. of Law in Supp. of VCU's Mot. to Dismiss 2d Am. Compl. 16.) In the interest of judicial economy, however, and because VCU also adopted the arguments of the City and Homeward (VCU's Reply to Resp. to Mot. to Dismiss 2d Am. Compl. 9), the Court will not engage in a full analysis of the application of sovereign immunity or the Eleventh Amendment.

up for overnight shelter; and, (4) VCU's alleged retaliation by rescinding the offer to provide free transportation to the homeless to and from the Conrad Center. (*See* 2d Am. Compl. ¶¶ 104-10.)

For the reasons articulated as to the ADA, this Court finds that each of these actions represents the continuing ill effects of the original decision to locate the Conrad Center on Oliver Hill Way. *See Jersey Heights Neighborhood Ass'n*, 174 F.3d at 189; *Moseke*, 202 F. Supp. 2d at 507. ASWAN fails to allege any facts establishing a continuing violation of the FHA. Therefore, the undersigned RECOMMENDS that the Court DISMISS Counts Two, Three, Five, Six, Nine, Ten, Twelve, and Thirteen.

### 3. ASWAN's Equal Protection Claim

ASWAN contends that the City violated the Equal Protection Clause because it adopted a re-zoning plan and the Downtown Plan, which "targeted homeless people with no rational basis to do so." (2d Am. Compl. ¶¶ 224-25.) To succeed on an equal protection claim, a plaintiff must plead facts demonstrating that he or she has been treated differently from other, similarly situated individuals, and that the unequal treatment resulted from intentional or purposeful discrimination. *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002) (*quoting Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

As with ASWAN's ADA and FHA claims, however, the applicable statute of limitations precludes the Court's review of ASWAN's Equal Protection claim against the City. Virginia's two-year statute of limitations applies to Equal Protection claims. *Al-Amin v. Shear*, 325 F. App'x 190, 193 & n.2 (No. 08-7681) (4th Cir. 2009), *available at* 2009 WL 971454, at *2 & n.2 (*citing Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991); *see also Jersey Heights Neighborhood Ass'n*, 174 F.3d at 187 (stating that "the personal nature of the right against discrimination justifies applying the state personal injury limitations period"). The City

adopted the offending zoning ordinance on July 28, 1997. (City of Richmond's Mot. Dismiss 2d Am. Compl. 17.) Therefore, any challenge to the City's adoption of the zoning ordinance asserting that the ordinance violated the Equal Protection Clause became time-barred after July 28, 1999.[18] The City adopted the Downtown Plan on October 13, 1997. (2d Am. Compl. ¶ 186.) Any challenge to the Downtown Plan as violative of the Equal Protection Clause became time-barred well before the 2009 filing of this court action. Therefore, the undersigned RECOMMENDS that the Court DISMISS Count Seven.

### 4.    ASWAN's Section 1983 Claim Is Time-Barred

ASWAN contends that the City violated 42 U.S.C. § 1983. (2d Am. Compl. 91.) To state a claim under Section 1983, a plaintiff must establish that the defendant has deprived him or her of a right secured by the Constitution and the laws of the United States, and that the defendant deprived the plaintiff of this right under color of state law. *Davis*, 896 F. Supp. at 569 (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). However, this claim, too, meets a time bar because Virginia's two-year statute of limitations on personal injury claims applies to Section 1983 claims. *Lewis*, 947 F.2d at 735. ASWAN has not claimed any violation of Section 1983 whose injury date would have preceded the Conrad Center's opening, meaning that any Section 1983 claim became time-barred, at the very latest, after February 5, 2009. Therefore, the undersigned RECOMMENDS that the Court DISMISS ASWAN's Section 1983 claim.[19]

---

[18] The Court notes that the original organization using the name ASWAN timely challenged the zoning ordinance in 1997. (2d Am. Compl. ¶ 75.)

[19] ASWAN improperly pled its Section 1983 claim. This Court's October 15, 2009 Order ordered ASWAN to "file an amended Complaint wherein the Plaintiff sets forth its claims as separately numbered counts in which the Plaintiff identifies the specific statute alleged to have been violated." (Oct. 15, 2009 Order 1.) ASWAN asserts a claim under Section 1983 only in its

26

## C.    ASWAN's Allegation of Retaliation

Finally, ASWAN asserts a claim for retaliation as a result of VCU's rescission of an agreement to provide free transportation to the homeless community to and from the Conrad Center. (*See* 2d Am. Compl. ¶¶ 113-14.) This Court determines that this claim must fail.

To establish a prima facie case of retaliation under the ADA,[20] a plaintiff must allege: (1) that he or she has engaged in conduct protected by the ADA; (2) that he or she suffered an adverse action after engaging in the protected conduct; and, (3) that a causal link exists between the protected activity and the adverse action. *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). ASWAN fails to allege these elements. Moreover, even presuming VCU's actions were retaliatory, VCU has no obligation to provide free transportation to homeless persons who use the Conrad Center, and challenging the refusal to provide such transportation does not properly allege a discriminatory act or adverse action.[21] The undersigned RECOMMENDS that the Court DISMISS this claim.

## V.  Conclusion

The Court commends the nature of ASWAN's organizational goals. However, the claims before the Court do not present legal violations which this Court may remedy. For the foregoing

---

prayer for relief, and fails to include a separately numbered count for this claim. (*See* 2d Am. Compl. at 91 (claiming that "[t]he City violated 42 U.S.C. Section 1983").) As such, ASWAN has failed to comply with the Court's October 15, 2009 Order, and the Court may properly dismiss the claim on that ground as well.

[20] It is not clear which statute ASWAN asserts a claim of retaliation. Because the retaliation discussion falls within the discussion of Count One, which alleges that VCU violated the ADA, the Court presumes ASWAN alleges a count of retaliation under the ADA.

[21] The Court notes that this claim, like ASWAN's Section 1983 claim, was not identified in a separately numbered count, and thus fails to comply with this Court's October 15, 2009 Order. The Court may properly dismiss the retaliation claim on that basis as well.

reasons, the undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss (Docket Nos. 35, 39, 40), and DISMISS WITH PREJUDICE ASWAN's Second Amended Complaint (Docket No. 33).

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the Complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to all counsel of record and to the Honorable Robert E. Payne.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: Feb. 17, 2010